## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

MARK LEON LAURY,                                    )
                                                    )
                              Plaintiff,            )
                                                    )        **CIVIL ACTION**
v.                                                  )
                                                    )        **No. 16-2758-JWL**
NANCY A. BERRYHILL,[1]                              )
Acting Commissioner of Social Security,            )
                                                    )
                              Defendant.            )
_____ )


## MEMORANDUM AND ORDER


Plaintiff seeks review of a decision of the Acting Commissioner of Social Security

(hereinafter Commissioner) made after remand denying Disability Insurance benefits

(DIB) under sections 216(i) and 223 of the Social Security Act.  42 U.S.C. §§ 416(i) and

423 (hereinafter the Act).  Finding no error in the Administrative Law Judge's (ALJ)

decision after remand, the court ORDERS that judgment shall be entered pursuant to the

fourth sentence of 42 U.S.C. § 405(g) AFFIRMING that decision.

## I.      Background

---

[1]On Jan. 20, 2017, Nancy A. Berryhill became Acting Commissioner of Social
Security.  In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Ms.
Berryhill is substituted for Acting Commissioner Carolyn W. Colvin as the defendant.  In
accordance with the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

Plaintiff applied for DIB, alleging disability beginning April 29, 2013. (R. 170, 1088). An ALJ denied Plaintiff's application in a decision dated April 28, 2014, and Plaintiff perfected an appeal to this court, which found that the ALJ's decision must be remanded because it did not reflect that the ALJ had considered the opinion of Plaintiff's wife, as required by case law. Laury v. Colvin, Civ. A. No. 14-2386-JWL (D. Kan. Aug. 4, 2015) slip op. at 5-7 (appearing in the record at pp. 1184-90) (citing Blea v. Barnhart, 466 F.3d 903, 914-15 (10th Cir. 2006), and Adams v. Chater, 93 F.3d 712, 715 (10th Cir. 1996)). The court declined to decide in the first instance whether Plaintiff's wife's opinion "should be weighed as an 'other' medical source opinion in accordance [with] SSR [(Soc. Sec. Ruling)] 06-3p." Id. (R. 1190).

On remand, the Appeals Council vacated the decision of the ALJ, and remanded the case to an ALJ to consolidate with a subsequently-filed duplicate claim, to take further action to complete the administrative record, and to issue a new decision on the associated claims. (R. 1193-94). The ALJ consolidated the claims, held another hearing and issued a decision after remand on April 4, 2016. (R. 1088-1105, 1116-50). Thereafter, Plaintiff submitted a request to review the decision after remand and a brief explaining his objections to the decision, along with additional evidence for the Appeals Council. (R. 1301-21). The Appeals Council received the request, the brief, and the additional evidence and agreed to consider Plaintiff's objections. (R. 1083-83). The Appeals Council issued an Order making Plaintiff's brief and the additional evidence a part of the administrative record in this case, but found no basis to change the ALJ's

decision after remand, and declined to assume jurisdiction. (R. 1076-80). Therefore, the

ALJ's decision is the final decision of the Commissioner after remand, subject to judicial

review. 42 U.S.C. § 405(g); see also (R. 1076). Plaintiff filed a timely appeal with this

court, and the cause is now ripe for decision.

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052

(10th Cir. 2009). The Act provides that "[t]he findings of the Commissioner as to any

fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The

court must determine whether the ALJ's factual findings are supported by substantial

evidence in the record and whether he applied the correct legal standard. Lax v. Astrue,

489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th

Cir. 2001). Substantial evidence is more than a scintilla, but it is less than a

preponderance; it is "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see

also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).

The court may "neither reweigh the evidence nor substitute [its] judgment for that

of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting

Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord,

Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala,

36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record,

nor try the issues de novo, nor substitute [the Court's] judgment for the

[Commissioner's], even if the evidence preponderates against the [Commissioner's]

3

decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988)). Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability. 20 C.F.R. § 404.1520; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has a severe impairment(s), and whether the severity of his impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51. After evaluating step three, the Commissioner assesses claimant's residual functional capacity (RFC). 20 C.F.R. § 404.1520(e). This assessment is used at both step four and step five of the sequential evaluation process. Id.

The Commissioner next evaluates steps four and five of the sequential process-- determining whether, in light of the RFC assessed, claimant can perform his past relevant work; and whether, when also considering the vocational factors of age, education, and work experience, claimant is able to perform other work in the economy. Wilson, 602

F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work. Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC assessed. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999). The court finds no error in the decision and considers Plaintiff's arguments in the order of his Brief.

## II.     RFC Relating to Plaintiff's Physical Impairments

Plaintiff argues that the ALJ's RFC relating to Plaintiff's physical impairments is not supported "by the substantial record evidence as a whole." (Pl. Br. 50). Plaintiff provides several arguments why he believes this is so. First he argues that although the ALJ accorded partial weight to Dr. Gaeta's opinion and significant weight to Dr. Coleman's opinion, he failed to explain why he did not include their restriction from concentrated exposure to vibration, although the job of bench assembler requires the use of vibrating power tools such as a pneumatic impact wrench, a power press, a pneumatic clinching gun, and a rivet press. (Pl. Br. 50).

Next, he argues that the ALJ should not have relied on Drs. Gaeta's and Coleman's opinions in any case because neither physician examined or treated Plaintiff. Id. In support thereof he argues that Dr. Gaeta's specialty is pediatrics and she has no expertise in adults with degenerative disc and joint problems. (Pl. Br. 51). He argues that both physicians' opinions were more than a year old when relied upon, and the ALJ failed his

duty to fully and fairly develop the record when he failed to seek a medical opinion from a treating or examining physician. (Pl. Br. 51).

Finally Plaintiff implies that the ALJ erred when he rejected the opinion of Plaintiff's physician's assistant, Dr. Wisener.[2] Id., at 52.

In response, the Commissioner begins by arguing that any error in failing to include a limitation from concentrated exposure to vibration is harmless because none of the representative jobs relied upon by the ALJ involve exposure to vibration. (Comm'r Br. 5). She then argues that because the ALJ rejected Dr. Gaeta's opinion that Plaintiff could perform medium work and accorded only partial weight to her manipulative and environment limitations which were similar to the limitations assessed by the ALJ, "Plaintiff's extended complaint about Dr. Gaeta's opinion provides no basis for remand." Id. at 6. She argues that the ALJ provided reasons, supported by the record evidence, to accord significant weight to Dr. Coleman's medical opinion, and that Plaintiff's remaining arguments of error in weighing the opinions are without merit. Id. at 7-8. She argues that Plaintiff merely summarizes Dr. Wisener's opinion and does not challenge the weight accorded by the ALJ. Id., at 8. Finally, she argues that it is the ALJ's duty to assess RFC based upon all of the evidence, and that he had no further duty to develop the record here because there was "sufficient evidence to determine that [Plaintiff] was not

_____

[2]Plaintiff asserts that APRN (Advanced Practice Registered Nurse) Moppin provided another opinion (Pl. Br. 52), but he makes no argument of error in the consideration of Ms. Moppin's opinion.

disabled."  (Comm'r Br. 9) (citing <u>Howard v. Barnhart</u>, 379 F.3d 945, 949 (10th Cir. 2004); <u>Chapo v Astrue</u>, 682, F.3d 1285, 1288 (10th Cir. 2012); and <u>Cowan v. Astrue</u>, 552 F.3d 1182, 1187 (10th Cir. 2008)).

In his Reply Brief, Plaintiff reiterated his arguments regarding physical impairments, and cited evidence which in his view detracts from the ALJ's findings and the Commissioner's arguments in this regard.  (Reply 1-5).  Plaintiff argued that an "ALJ's RFC [assessment], however, must be based on some medical opinion evidence." <u>Id.</u> at 5 (citing <u>Wells v. Colvin</u>, 727 F.3d 1061 (10th Cir. 2013) (without pinpoint citation); and <u>Fleetwood v. Barnhart</u>, 211 F. App'x 736, 740-41 (10th Cir. 2007)). Finally, he argued that the opinion in <u>Chapo</u> supports his argument that Dr. Gaeta's and Dr. Coleman's opinions were stale and therefore improperly relied upon.  <u>Id.</u> at 5-6.

### A.    The ALJ's Evaluation of the Opinion Evidence Regarding Physical Limitations, and His RFC Assessment Thereof

The court begins, as always, and as it must, with the ALJ's findings and his evaluation of the evidence.  With regard to physical limitations, the ALJ assessed Plaintiff with an RFC for a limited range of light work, finding that he "could stand or walk for four hours in an eight-hour workday, . . . could sit for six hours, . . . [and] could push or pull in the limits for lifting and carrying."  (R. 1094) (bolding omitted).  He found that Plaintiff was limited to "frequent overhead reaching with the left upper extremity, . . . frequently turn[ing] his head side-to-side and up-and-down, . . . [and] occasionally us[ing]

7

ramps and stairs, [but never] us[ing] ladders, ropes, or scaffolds." Id. Finally, he found

that Plaintiff "should avoid concentrated exposure to cold temperatures." Id.

In reaching his RFC assessment, the ALJ discounted Plaintiff's allegations of

symptoms resulting from his impairments because they "are not entirely consistent with

the medical evidence and other evidence in" the record. (R. 1095). He also considered

and discussed the medical source opinions regarding physical limitations:

> In making this finding, the undersigned gives some weight to the State
> agency medical opinions (Exhibit 7A and 10A [(R. 1155-64, 1167-82)]).
> Judee Gaeta, M.D. opined in November 2014 that the claimant retained the
> capacity for medium exertion level work subject to similar manipulative
> and environmental limitations as those set forth in the above residual
> functional capacity (Exhibit 7A). Upon reconsideration, consultant Gary
> Coleman, M.D., opined the claimant retained the capacity for light exertion
> work subject to similar manipulative and environmental limitations as those
> set forth in the above residual functional capacity.
>
> The undersigned has considered Dr. Coleman's opinion and finds it to be
> consistent with the medical evidence, generally. It receives significant
> weight. Dr. Gaeta's opinion, however, does not adequately consider the
> limitations caused by all of the claimant's orthopedic impairments, and that
> deficiency may be due, at least in part, by [sic] treatments offered the
> claimant after Dr. Gaeta's review of the evidence. Thus, the undersigned
> gives Dr. Gaeta's opinion partial weight only.
>
> The undersigned also considered an August 2011 opinion by clinician Mark
> Wisner, whose medical credentials are unknown.[3] [Mr.] Wisner noted that

---

[3]Plaintiff suggests that the ALJ is referring to "Dr. Mark Wisener, Ph.D. and PA."
(Pl. Br. 52 & n.1) (citing a "'Google' search" showing that Dr. Wisener has a Psy. D. and
was working as a Physician's Assistant at the VA.). This may or may not be correct, but
the medical records in this case reveal that Mr. Mark E. Wisner, a physician's assistant,
treated Plaintiff for a period of time at the VA. (R. 2586-2602). The court is unaware
whether Plaintiff merely misspelled Mr. Wisner's name or whether his search produced a
different individual. The court notes that the Commissioner has apparently  . . . Cont'd

the claimant had decreased range of motion and was unable to lift above the shoulder. It was noted the claimant allegedly had difficulty getting dressed. It was further noted "his employability due to restrictive lifting is limited. He would be able to have sedentary type work" (Exhibit 1F/100 [(R. 402)]). Another statement around this time noted the claimant was not to lift because of back and shoulder pain, along with allegations of knee pain. It was further noted the claimant would be able to have a job in an office-type environment with limited neck movement and with the accommodation of frequent position changes (Exhibit 1F/117 [(R. 419)]).

The statements of [sic] been considered but are given little weight. The medical evidence, generally, does not support a finding the claimant would be limited to "sedentary" work only. The specific factual bases for Mr. Wisner's statement were not included in his opinion thus, the general overview of the medical evidence described above prevails. Furthermore, while the claimant's ability to lift is certainly limited by his impairments, nothing in evidence would limit the claimant to an "office-type environment."

(R. 1097-98).

### B.      Standard for Evaluating Medical Source Opinions[4]

"Medical opinions are statements from physicians and psychologists or other

acceptable medical sources[5] that reflect judgments about the nature and severity of [a

_____

. . . followed Plaintiff's lead, and refers to "Dr. Wisener" in her Brief. (Comm'r Br. 8).
       The record referred to by the ALJ indicates that the "Req. Phys:" was "Wisner, Mark E.." (R. 401). Likely this is the same Mark E. Wisner who was the physician's assistant treating Plaintiff at that time. Nevertheless, the ALJ was correct--the . . .cont'd opinion at issue does not reveal Mr. Wisner's credentials. And the ALJ may not speculate.

       [4]This is also the standard applicable to evaluation of the opinions of mental healthcare providers, and will also be applied by the court in that regard, although not repeated, later in this decision.

       [5]The regulations define three types of "acceptable medical sources:"

       "Treating source:" an "acceptable medical source" who has provided   . . . Cont'd

9

claimant's] impairment(s) including [claimant's] symptoms, diagnosis and prognosis."
20 C.F.R. § 404.1527(a)(2). Such opinions may not be ignored and, unless a treating
source opinion is given controlling weight, <u>all</u> medical opinions will be evaluated by the
Commissioner in accordance with factors contained in the regulations. <u>Id.</u> § 404.1527(c);
SSR 96-5p, West's Soc. Sec. Reporting Serv., Rulings 123-24 (Supp. 2017). A physician
or psychologist who has treated a patient frequently over an extended period of time (a
treating source) is expected to have greater insight into the patient's medical condition,
and his opinion is generally entitled to "particular weight." <u>Doyal v. Barnhart</u>, 331 F.3d
758, 762 (10th Cir. 2003). But, "the opinion of an examining physician [(a nontreating
source)] who only saw the claimant once is not entitled to the sort of deferential treatment
accorded to a treating physician's opinion." <u>Id.</u> at 763 (citing <u>Reid v. Chater</u>, 71 F.3d
372, 374 (10th Cir. 1995)). However, opinions of nontreating sources are generally given
more weight than the opinions of nonexamining sources who have merely reviewed the
medical record. <u>Robinson v. Barnhart</u>, 366 F.3d 1078, 1084 (10th Cir. 2004); <u>Talbot v.
Heckler</u>, 814 F.2d 1456, 1463 (10th Cir. 1987) (citing <u>Broadbent v. Harris</u>, 698 F.2d 407,
412 (10th Cir. 1983), <u>Whitney v. Schweiker</u>, 695 F.2d 784, 789 (7th Cir. 1982), and <u>Wier
ex rel. Wier v. Heckler</u>, 734 F.2d 955, 963 (3d Cir. 1984)).

---

. . . the claimant with medical treatment or evaluation in an ongoing treatment
relationship. 20 C.F.R. §§ 404.1502, 416.902.
     "Nontreating source:" an "acceptable medical source" who has examined the
claimant, but never had a treatment relationship. <u>Id.</u>
     "Nonexamining source:" an "acceptable medical source" who has not examined
the claimant, but provides a medical opinion. <u>Id.</u>

Nevertheless, all evidence from nonexamining sources such as state agency physicians and medical experts is considered opinion evidence. 20 C.F.R. § 404.1527(e). Although an ALJ is not bound by such opinions he must consider them, except for opinions regarding the ultimate issue of disability. Id., § 404.1527(e)(2)(i). Such opinions must also be evaluated using the regulatory factors, and the ALJ must explain in the decision the weight given them. Id., § 404.1527(e)(2)(ii & iii).

"If [the Commissioner] find[s] that a treating source's opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) [(1)] is well-supported by medically acceptable clinical and laboratory diagnostic techniques and [(2)] is not inconsistent with the other substantial evidence in [claimant's] case record, [the Commissioner] will give it controlling weight." 20 C.F.R. § 404.1527(c)(2); see also, SSR 96-2p, West's Soc. Sec. Reporting Serv., Rulings 111-15 (Supp. 2017) ("Giving Controlling Weight to Treating Source Medical Opinions").

The Tenth Circuit has explained the nature of the inquiry regarding a treating source's medical opinion. Watkins v. Barnhart, 350 F.3d 1297, 1300-01 (10th Cir. 2003) (citing SSR 96-2p). The ALJ first determines "whether the opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques.'" Id. at 1300 (quoting SSR 96-2p). If the opinion is well-supported, the ALJ must confirm that the opinion is also consistent with other substantial evidence in the record. Id. "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

If the treating source opinion is not given controlling weight, the inquiry does not end. Id. A treating source opinion is "still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." Id. Those factors are: (1) length of treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Id. at 1301; 20 C.F.R. § 404.1527(c)(2-6); see also Drapeau v. Massanari, 255 F.3d 1211, 1213 (10th Cir. 2001) (citing Goatcher v. Dep't of Health & Human Servs., 52 F.3d 288, 290 (10th Cir. 1995)).

After considering the factors, the ALJ must give reasons for the weight he gives. Id., 350 F.3d at 1301. "Finally, if the ALJ rejects the opinion completely, he must then give 'specific, legitimate reasons' for doing so." Id. (citing Miller v. Chater, 99 F.3d 972, 976 (10th Cir. 1996) (quoting Frey v. Bowen, 816 F.2d 508, 513 (10th Cir. 1987)).

Recognizing the reality that an increasing number of claimants have their medical care provided by health care providers who are not "acceptable medical sources"--nurse practitioners, physician's assistants, social workers, and therapists, the Commissioner promulgated SSR 06-3p. West's Soc. Sec. Reporting Serv., Rulings 327-34 (Supp. 2017). In that ruling, the Commissioner noted:

With the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not "acceptable medical sources," such as nurse practitioners, physician assistants, and licensed clinical social workers, have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists. Opinions from these medical sources, who are not technically deemed "acceptable medical sources" under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file.

Id., Rulings, 330-31.

SSR 06-3p explains that such opinions will be evaluated using the regulatory factors for evaluating medical opinions; id., at 331-32 (citing 20 C.F.R. § 404.1527); and explains that the ALJ "generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the . . . decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." Id., at 333.

**C.    Analysis**

The court finds no error in the ALJ's evaluation of Dr. Gaeta's, Dr. Coleman's, or Mr. Wisner's opinions. It agrees with the Commissioner that the error in failing to include Dr. Gaeta's and Dr. Coleman's restriction from concentrated exposure to vibration is harmless. Plaintiff argues that he is prejudiced because the job of bench assembler requires the use of vibrating power tools such as a pneumatic impact wrench, a power press, a pneumatic clinching gun, and a rivet press. (Pl. Br. 50). There are at least two problems with this argument. First, Plaintiff cites no authority for this assertion, and

second, as the Commissioner argues, the <u>Dictionary of Occupational Titles</u> (DOT) demonstrates that all of the representative jobs relied upon by the ALJ, including the job of bench assembler do not involve vibration, much less "concentrated vibration" as opined by Drs. Gaeta and Coleman. While it may appear intuitive to the lay observer that use of some of the tools listed above involve vibration, the presence of "concentrated vibration" is not so intuitive. And disability determinations may not be based on lay intuition. That is one reason why vocational experts testify in most disability hearings. Moreover, for each of the representative jobs relied upon here, the DOT specifically states, "Vibration: Not Present - Activity or condition does not exist." 1991 WL 672232 (office helper, DOT no. 239.567-010); 1991 WL 679055 (bench assembler, DOT no. 706.684-042); 1991 WL 671745 (photocopy machine operator, DOT no. 207.685-014).

In his Reply Brief, Plaintiff argues that the Commissioner's "[r]eliance on the DOT as a definitive authority on job requirements is misplaced because the DOT definitions are simply generic job descriptions." (Reply 1) (citing <u>Farley v. Colvin</u>, No. 14-2099-CM, 2014 WL 7407601, at *3 (D. Kan. Dec. 30, 2014)). The court notes that <u>Farley</u> is the decision of another court of this district, and as such is not precedent binding on this court. However, the proposition upon which the <u>Farley</u> court relied was that "the DOT provides the <u>maximum</u> requirements for a particular job," and it cites a decision of this court in support of that proposition. <u>Farley</u>, 2014 WL 7407601, at *3 (emphasis added) (citing <u>Thongleuth v. Astrue</u>, No. 10-1101-JWL, 2011 WL 1303374, at *18 (D. Kan. Apr. 4, 2011) ("[A] claimant's reliance on the DOT as a definitive authority on job

14

requirements is misplaced because DOT definitions are simply generic job descriptions that offer the approximate maximum requirements for each position, rather than their range") (emphasis added)). Neither the Farley opinion nor the Thongleuth opinion requires a different result in this case, because as those opinions suggest, the approximate maximum vibration present in the jobs relied upon in this case is none--it is not present, according to the DOT. And, the Social Security Regulations specifically state that the DOT is "reliable job information" of which the Social Security Administration will take administrative notice. 20 C.F.R. § 404.1566(d). Any error in the ALJ's failure to include a limitation from concentrated exposure to vibration is harmless here.

Plaintiff's argument that Dr. Gaeta's opinion is unworthy of weight because she is a pediatrician goes to the weight, not the admissibility, of her opinion. She is a physician and an expert in medical matters, and she is a program physician, and as such she is an expert in the Social Security disability program and her opinions must be considered and weighed by the ALJ. 20 C.F.R. § 404.1527(e). Moreover, the ALJ accorded only partial weight to Dr. Gaeta's opinion, and Plaintiff points to no opinion of a medical specialist which requires further reduction in the weight accorded to Dr. Gaeta's opinion.

The argument that the opinions of Dr. Gaeta and Dr. Coleman should have been rejected because they were stale is also without merit. Plaintiff is correct that the Tenth Circuit found it troubling when an ALJ relied on "a patently stale opinion." Chapo v. Astrue, 682 F.3d 1285, 1292-93 (10th Cir. 2012). This was so because the relevant medical record in that case "underwent material changes in the twenty months between"

the medical opinion relied upon and the ALJ's decision. Id., 682 F.3d at 1292. In Chapo, there were no diagnostic imaging studies, and examination revealed negative straight leg raises and a normal gait when the opinion relied upon was formulated. Id. In the interim, the plaintiff's condition changed considerably. Id. However, because the ALJ had moderated the extreme limitations of the opinion relied upon, and properly rejected a summary RFC assessment opined by a treating physician, and because the court otherwise determined remand was necessary, it did "not make a definitive determination on this question," but encouraged "the ALJ to obtain an updated exam or report to forestall any potential problems from arising . . . on remand." Id. 682 F.3d at 1293.

This case is to be distinguished from Chapo. Here, there were diagnostic imaging studies available when Dr. Gaeta reviewed the record (R. 568-80), and more studies available when Dr. Coleman formulated his opinion. (R. 1472-92, 1783-84, 1942-43). Perhaps most importantly in this case, Plaintiff has not shown a material change in the record or in Plaintiff's condition after Dr. Coleman formulated his opinion. Moreover, here the ALJ did not merely rely on the opinions of Dr. Gaeta and Dr. Coleman. He considered and summarized the entire record and made his own evaluation of Plaintiff's condition over time and of the physician's opinions. In fact, he specifically noted that he discounted Dr. Gaeta's opinion because of "treatments offered the claimant after Dr. Gaeta's review of the evidence." (R. 1097). As the Commissioner points out, RFC is an administrative not a medical determination, and it is the ALJ's duty to make that assessment based on all of the record evidence, both medical and non-medical.

Next, as the Commissioner points out, Plaintiff merely summarizes Mr. Wisner's opinion as presented in the record evidence, but does not argue error in the ALJ's determination to accord little weight to that opinion. To the extent Plaintiff seeks to have the court reweigh the evidence cited in his Brief, the court reminds him that the court may not reweigh the evidence or substitute its judgment for that of the Commissioner. Bowman, 511 F.3d at 1272; accord, Hackett, 395 F.3d at 1172; see also, Bowling, 36 F.3d at 434 (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.").

Plaintiff's remaining arguments regarding assessment of physical limitations rest upon the mistaken assumption that an "ALJ's RFC [assessment], however, must be based on some medical opinion evidence." (Reply at 5) (emphasis added) (citing Wells v. Colvin, 727 F.3d 1061 (10th Cir. 2013) (without pinpoint citation); and Fleetwood v. Barnhart, 211 F. App'x 736, 740-41 (10th Cir. 2007)).

However, as the Commissioner points out, "the ALJ, not a physician, is charged with determining a claimant's RFC from the medical record." Howard v. Barnhart, 379 F.3d 945, 949 (10th Cir. 2004). "And the ALJ's RFC assessment is an administrative, rather than a medical determination." McDonald v. Astrue, 492 F. App'x 875, 885 (10th Cir. 2012) (citing SSR 96-05p, 1996 WL 374183, at *5 (July 1996)). Because RFC assessment is made based on "all of the evidence in the record, not only the medical evidence, [it is] well within the province of the ALJ." Dixon v. Apfel, No. 98-5167, 1999

WL 651389, at **2 (10th Cir. Aug. 26, 1999); 20 C.F.R. § 404.1545(a).  Moreover, the

final responsibility for determining RFC rests with the Commissioner.  20 C.F.R.

§§ 404.1527(d)(2), 404.1546.

The opinions in <u>Wells</u> and <u>Fleetwood</u> do not change that fact.    In <u>Wells</u>, the court

noted that in cases where the medical opinions appear to conflict with the ALJ's decision

to the point of posing a serious challenge to the RFC assessment, it may be inappropriate

for the ALJ to reach an RFC determination without expert medical assistance.  <u>Wells</u>, 727

F.3d at 1072.  However, before noting that exception--applicable in that case--the <u>Wells</u>

court cited <u>Chapo</u> for the proposition that "there is no requirement in the regulations for a

direct correspondence between an RFC finding and a specific medical opinion on the

functional capacity in question" because "the ALJ, not a physician, is charged with

determining a claimant's RFC from the medical record."  <u>Id.</u> at 1071 (quoting <u>Chapo</u>, 682

F.3d at 1288) (alteration and internal quotation marks omitted).  Here, Plaintiff has not

shown that the medical opinions conflict with the ALJ's decision to the point of posing a

serious challenge to the RFC assessment, and has not pointed out a medical opinion

contrary to the ALJ's physical RFC assessment.  <u>Fleetwood</u> merely stands for the

unremarkable proposition that the Commissioner's check-the-box evaluation forms

"standing alone, unaccompanied by thorough written reports or persuasive testimony, are

not substantial evidence."   <u>Fleetwood</u>, 211 F. App'x at 740 (quoting <u>Frey v. Bowen</u>, 816

F.2d 508, 515 (10th Cir. 1987); and citing SSR 96-6p, 1996 WL 374180, at *2

(permitting an ALJ to rely on opinions of medical consultants if opinions are supported

by evidence in the case record)).  Here, Dr. Coleman's opinion contains a thorough analysis and explanation (R. 1176-78), and Dr. Coleman's opinion is supported by evidence in the case record, as the ALJ summarized and explained.  Plaintiff has shown no error in the ALJ's assessment of physical RFC limitations.

## III.    RFC Relating to Plaintiff's Mental Impairments

Plaintiff argues that the ALJ's RFC assessment regarding Plaintiff's mental impairments is also "unsupported by the substantial evidence of the record as a whole." (Pl. Br. 53) (bolding omitted).  He argues this is so for numerous reasons.  He argues that the nonexamining source opinion of the state agency psychologist, Dr. Blum, like those of Dr. Gaeta and Dr. Coleman, is not substantial evidence to support the ALJ's decision, and that Dr. Blum opined, contrary to the ALJ's RFC assessment that although "Plaintiff was able to understand complex, detailed instructions, in practice, his symptoms would reduce his effectiveness in performing intermediate tasks."  Id., at 53-55.  In footnotes to his Brief, Plaintiff argues that because the ALJ discounted all of the opinions there was no substantial medical evidence upon which the ALJ could rely to assess RFC, that the ALJ improperly picked and chose among the opinions when he rejected portions of the opinions, and that the ALJ is not "permitted to rely on his own 'medical expertise.'" Id., at 53, n.2&3 (quoting Ness v. Sullivan, 904 F.2d 432, 435 (8th Cir. 1990).

He argues that the ALJ erroneously rejected all of the treating and nontreating source opinions in the record even though they are entitled to greater weight than the nonexamining source opinions of the state agency psychologists.  Id., at 55.  He argues

that the ALJ was obligated to recontact Dr. Khan, Plaintiff's treating psychiatrist, and erroneously discounted the GAF[6] score of 57 assessed by Dr. Khan.  (Pl. Br. 55).  He argues that the ALJ did not provide a valid reason to reject Dr. Khan's opinion.  Id., at 56. Plaintiff argues that the ALJ failed to address any of the regulatory factors for evaluating medical opinions when weighing Dr. Khan's opinion.  Id., at 57.  Finally, Plaintiff argues the ALJ failed to give good reasons to reject Dr. Schale's opinion, and failed to identify the weight accorded to Dr. Hass's opinion.  Id. at 58-59.

The Commissioner argues that the ALJ reasonably assessed Plaintiff's mental limitations.  She argues that even if Plaintiff is unable to do intermediate level, SVP (specific vocational preparation) level 5 work, all of the representative jobs upon which the ALJ relied were unskilled SVP 2 jobs.  (Comm'r Br. 9).  She argues that although Plaintiff argues that certain evidence in the record supports a different outcome, since "the ALJ's conclusion in his case is based on one reasonable interpretation of the

---

[6]A Global Assessment of Functioning, or GAF, score is a subjective determination which represents "the clinician's judgment of the individual's overall level of functioning."  Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR) 32 (4th ed. text revision 2000).  The GAF Scale ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death).  Id. at 34.  GAF is a classification system providing objective evidence of a degree of mental impairment.  Birnell v. Apfel, 45 F. Supp. 2d 826, 835-36 (D. Kan. 1999) (citing Schmidt v. Callahan, 995 F. Supp. 869, 886, n.13 (N.D. Ill. 1998)).
A GAF score in the range from 51 to 60 indicates "**Moderate symptoms** (e.g., flat affect and circumstantial speech, occasional panic attacks) **OR moderate difficulty in social, occupational, or school functioning** (e.g., few friends, conflicts with peers or co-workers).  DSM-IV-TR, at 34 (emphasis in original).

evidence, the [c]ourt must affirm." Id. at 10 (emphasis in original) (citing Nguyen v.

Shalala, 43 F.3d 1400, 1403 (10th Cir. 1994) (citing Melkonyan v. Sullivan 501 U.S. 89

at 100-01 (1991) (a court may not remand merely because of a disagreement with the

outcome of the case before the agency)).

The Commissioner also argues that the ALJ provided reasons supported by the

record evidence to discount both Dr. Khan's and Dr. Schale's opinions. (Comm'r Br. 10-

13). She argues that an ALJ is not required to specifically discuss each of the regulatory

factors for weighing medical opinions, and that the ALJ in this case considered, as the

regulations require, all of those factors in making his decision. Id., at 12-13. Finally, the

Commissioner appears to agree that the ALJ did not weigh Dr. Hass's opinion that

Plaintiff has "total occupational and social impairment" (R.333), but argues that this

opinion mirrors another VA decision finding 100% disability on the basis of Post-

Traumatic Stress Disorder (PTSD), which the ALJ specifically discounted, and that

remand is not required where the ALJ considered and rejected a nearly identical opinion.

(Comm'r Br. 13-15).

   **A.**    **The ALJ's Evaluation of the Opinion Evidence Regarding
              Mental Limitations, and His RFC Assessment Thereof**

With regard to his mental impairments, the ALJ found that Plaintiff is limited to

"occasional contact with co-workers, supervisors, and the general public," and that he can

"understand, remember, and carry out moderately complex instructions and tasks at an

SVP 5 level." (R. 1094) (bolding omitted). As noted above, in reaching his RFC

assessment, the ALJ discounted Plaintiff's allegations of symptoms resulting from his impairments because they "are not entirely consistent with the medical evidence and other evidence in" the record. (R. 1095).

The ALJ provided an extensive discussion of the record evidence regarding Plaintiff's mental impairments. (R. 1098-1103). He noted that treatment included medication management, "group counseling and very little independent therapy." Id. at 1098. He noted a GAF score of 57 assigned "throughout 2015," and accorded it some weight. Id. He discussed the medical record evidence regarding Plaintiff's substance use disorder (alcohol use). Id., at 1098-99. He noted evidence regarding Plaintiff's compliance with medication prescribed for his mental impairments. Id. at 1099.

The ALJ accorded some weight to the state agency psychological consultants' opinions, noting that he accorded little weight to the opinions of Drs. Maxfield, Frantz, and Aram, and some weight to Dr. Blum's opinion. Id., at 1100.

The ALJ considered the medical opinion of Plaintiff's treating psychiatrist, Dr. Khan, but gave it no weight because he "had treated the claimant since 2014 only," because he did not specify how Plaintiff's daily activities were limited, because the opinion "is light on the underlying facts in support," and it "directly contradict[s] the GAF scores he issued," and because of "the lack of any mention of the claimant's alcohol abuse." Id. Finally, he noted that Dr. Khan's opinion that Plaintiff is "very unlikely to be able to obtain or maintain gainful employment in any setting for meaningful [sic] period

of time," id. (quoting Ex. 17F (R. 2410)), is an opinion on an issue reserved to the Commissioner and is not entitled to special significance. Id., at 1101.

The ALJ considered and weighed the opinion of Dr. Schale, the psychologist who treated Plaintiff, primarily in group therapy situations. The ALJ accorded Dr. Schale's opinion no weight because Dr. Schale's treatment notes do not document symptoms or limitations consistent with the opinion, "it is unclear how individualized" Dr. Schale's opinion is "because group therapy progress notes failed to provide detailed information about the claimant," because Dr. Schale's opinion makes no mention of Plaintiff's alcohol use, the opinion is inconsistent with the GAF of 57 assigned by the VA, the opinion is inconsistent with Plaintiff's mental health treatment notes, and Dr. Schale's opinion of 100% disability is on an issue reserved to the Commissioner. (R. 1101).

Finally, the ALJ considered and discussed the opinions represented by the 100% disability rating for PTSD and 10% disability rating for a left knee impairment assigned by the VA. (R. 1102-03). He explained that he had not accorded significant weight to those opinions because they are based on agency rules which are different than those applied by the Social Security Administration (SSA), because VA disability ratings are based on a percentage of diminished earning capacity whereas Social Security disability is the inability to perform past relevant work or any other substantial gainful work in the economy, and because the VA is required to give the veteran the "benefit of the doubt" which is different than the standard applied by the SSA. Id., at 1102. He explained that the VA opinions were discounted because of the reasons stated earlier throughout his

opinion and since the disability rating for Plaintiff's left knee and ankle was based on his

subjective reports, there was a great possibility that the rating for PTSD was also based on

his subjective complaints, which the ALJ found not credible.  (R. 1103).

**B.**     **Analysis**

Applying the standard for evaluating medical opinions noted above, the court finds

no error as alleged by Plaintiff.

Plaintiff has shown no error in the ALJ's determination to accord some weight to

Dr. Blum's opinion.  The RFC assessment of which Plaintiff complains in this regard is

that Plaintiff is able to understand, remember, and carry out moderately complex

instructions and tasks at an SVP 5 level.  He argues that this is error because although Dr.

Blum opined that Plaintiff is "able to understand complex, detailed instructions, in

practice his symptoms would reduce his effectiveness in performing intermediate tasks."

(Pl. Br. 53) (citing R. 1173).  But Plaintiff misunderstands Dr. Blum's opinion.  Dr. Blum

stated, "The claimant should be capable of understanding complex detailed instructions

but his symptoms may reduce his effectiveness in practice to intermediate tasks."  (R.

1173).  In other words, Dr. Blum opined that Plaintiff is capable of understanding

complex detailed instructions but his symptoms reduce him to performing only

intermediate tasks.  Dr. Blum's opinion is that Plaintiff's symptoms reduce him from

complex tasks to intermediate tasks, not that his effectiveness in intermediate tasks is

further limited.  Thus, the ALJ's finding that Plaintiff is capable of moderately complex

instructions and tasks at SVP 5 level is supported by Dr. Blum's opinion.  Moreover, as

24

the Commissioner points out, Plaintiff has shown no prejudice even if SVP 5 is erroneous, because all of the representative jobs relied upon require only an SVP 2 level.

Plaintiff's argument that the ALJ picked and chose through the state agency psychologists' medical opinions to support a finding of non-disability misunderstands both the duty of the ALJ and the prohibition from picking and choosing among medical opinions. It is the ALJ's responsibility ultimately to assess an RFC in every case. 20 C.F.R. §§ 404.1527(d)(2), 404.1546. As already explained in this opinion, "the ALJ, not a physician, is charged with determining a claimant's RFC from the medical record." Howard v. Barnhart, 379 F.3d 945, 949 (10th Cir. 2004). "And the ALJ's RFC assessment is an administrative, rather than a medical determination." McDonald v. Astrue, 492 F. App'x 875, 885 (10th Cir. 2012) (citing SSR 96-05p, 1996 WL 374183, at *5 (July 1996)). Because RFC assessment is made based on "all of the evidence in the record, not only the medical evidence, [it is] well within the province of the ALJ." Dixon v. Apfel, No. 98-5167, 1999 WL 651389, at **2 (10th Cir. Aug. 26, 1999); 20 C.F.R. § 404.1545(a).

As Plaintiff cites in his Brief, the adjudicator may not pick and choose among or within the medical opinions in a case record. (Pl. Br. 53, n.3) (citing Haga v. Astrue, 482 F.3d 1205, 1208 (10th Cir. 2007); Robinson, 366 F.3d at 1083; Switzer v. Heckler, 742 F.2d 382, 385-86 (7th Cir. 1984); and Taylor ex rel. McKinnies v. Barnhart, 333 F. Supp. 2d 846, 856 (E.D. Mo. 2004)). However, Plaintiff misses the distinction between picking and choosing among opinions or portions of opinions--which is prohibited, and accepting

and rejecting certain opinions or portions of opinions based upon an appropriate basis--
which is the duty of the ALJ.  The key, which is recognized in each case cited by
Plaintiff, is whether the ALJ explains the reasons for accepting or rejecting certain
opinions or portions thereof, or whether the ALJ merely ignores the opinions or portions
thereof which are contrary to the decision made.

In Haga, the ALJ rejected certain of a physician's opinions while implicitly
adopting others, but he failed to provide the reasons for doing so.  482 F.3d at 1207.
After pointing out that the government may not provide post hoc rationalizations for the
Commissioner's decision and that the evidence the ALJ explicitly relied upon in his
decision did not imply an explanation for rejecting the physician's opinions, the court
concluded that it "agree[d] that the ALJ should have explained why he rejected four of
the moderate restrictions on Dr. Rawlings' RFC assessment while appearing to adopt
others.  An ALJ is not entitled to pick and choose through an uncontradicted medical
opinion, taking only the parts that are favorable to a finding of non disability."  Id., at
1208.  The problem was not that the ALJ accepted portions of the opinion while rejecting
others, it was that he did not explain his bases for doing so--he simply ignored the
portions which were unfavorable to his decision.

Robinson is to the same effect.  The court noted that the ALJ did not articulate the
weight accorded to the medical opinion of Dr. Baca, he failed to explain why he did not
give the opinion controlling weight, and failed to explain what lesser weight he assigned
the opinion.  366 F.3d at 1082-83.  Yet, the court recognized that "[t]he ALJ clearly gave

Dr. Baca's opinion some weight, because he relied on it for his opinion that claimant was stable on medication." 366 F.3d at 1083. It then stated the principle it applied:

> The ALJ is not entitled to pick and choose from a medical opinion, using only those parts that are favorable to a finding of nondisability. Because the ALJ failed to provide any explanation of how he assessed the weight of the treating physician's opinion, as required by Soc. Sec. R. 96–2p, we cannot simply presume the ALJ applied the correct legal standards in considering Dr. Baca's opinion.

Id. (citation, brackets and quotations omitted). Again, the basis for the principle is the lack of an explanation for the different treatment of favorable and unfavorable opinions. The court in Switzer stated the principle perhaps most succinctly: "This report is uncontradicted and the Secretary's attempt to use only the portions favorable to her position, while ignoring other parts, is improper." 742 F. 2d, at 385-86 (emphasis added). The district court in Taylor recognized the same principle. 333 F. Supp. 2d at 856. The court summarized the basis for its finding of error was that "the ALJ focuse[d] on Terrance's art teacher's report to the exclusion of other evidence in the record reaching opposite conclusions. The ALJ failed to acknowledge observations of Terrance's other teachers." Id. (emphasis added).

Here, the ALJ explained the weight accorded to the state agency psychologists' opinions and the reasons for according that weight. The ALJ did not ignore their opinions that Plaintiff had moderate difficulties maintaining concentration, persistence, or pace. Rather, he specifically acknowledged it, but explained that he found "that the medical evidence is most consistent with a determination that the claimant experienced no more

than mild difficulties in his ability to maintain concentration, persistence, or pace for the reasons discussed in more detail below." (R. 1093). He was not required to accept or reject the opinions as units, and he did not.

The court finds no error in the ALJ's reasons to reject Dr. Khan's opinion. While Plaintiff is correct that a GAF score in the moderate range <u>might</u> indicate panic attacks or potential conflicts with co-workers, and does not conclusively establish the ability to work, it is indicative of only <u>moderate</u> symptoms, and as such is inconsistent with disability from all work, and is a valid reason (when included among others) to reject Dr. Khan's opinion. Plaintiff argues that Dr. Khan's failure to discuss Plaintiff's alcohol abuse in his opinion is not a basis to discount the opinion because "Dr. Khan clearly did not find Plaintiff's purported alcohol use to be an issue" and "repeatedly noted in 2015 that Plaintiff's alcohol abuse was in remission," and because even "the ALJ did not find Plaintiff's purported use of alcohol to be a material factor." (Pl. Br. 56).

Plaintiff does not explain what he means by arguing that "the ALJ did not find Plaintiff's purported use of alcohol to be a material factor." <u>Id.</u> There is simply no mention in the decision of any consideration by the ALJ whether alcohol use or abuse is a "material" factor. The court presumes that Plaintiff is pointing out that although there is record medical evidence of alcoholism, the ALJ did not find that "alcoholism is a contributing factor <u>material to the determination of disability</u>." 20 C.F.R. § 404.1535(a) (emphasis added). However, a finding of disability is a condition precedent to consideration whether alcoholism is a contributing factor material to that determination.

20 C.F.R. § 404.1535(a).  Because the ALJ did not find Plaintiff disabled, it was not necessary to consider whether alcoholism was a contributing factor material to that determination, and it is not surprising that he did not discuss that issue.  Nonetheless, the decision makes clear that the ALJ considered Plaintiff's use of alcohol was material to Dr. Khan's and Dr. Schale's opinions regarding Plaintiff's mental abilities and limitations.  He explained his reasoning:

> Most troubling, however, is the lack of any mention of the claimant's alcohol abuse.  The evidence shows the claimant was drinking well after 2013, contrary to his hearing testimony.  Thus, Dr. Khan was either unaware of that use or avoided discussion of that use in an apparent attempt to make the claimant appear more favorable.  In either case, Dr. Khan was not presenting a full picture regarding the claimant's so-called symptoms and the possible overlay of alcohol abuse as it may relate to the claimant's alleged limitations.

(R. 1100).  Although Plaintiff argues that "Dr. Khan clearly did not find Plaintiff's purported alcohol use to be an issue" (Pl. Br. 56), Dr. Khan did not state that he did not find it to be an issue, leaving open the possibility that he was not even aware Plaintiff was still using alcohol.  Moreover, the ALJ recognized that in 2015 Dr. Khan repeatedly stated Plaintiff's alcohol abuse was in remission.  (R. 1099) ("The medical evidence documents that alcohol use was in remission throughout 2015, but those progress notes failed to record any actual discussion of the claimant's alcohol use.") (citing VA medical records which include Dr. Khan's 2015 treatment records (R. 2602-36)).  That is the point of the ALJ's discussion.  Although the record evidence indicates Plaintiff at least continued to use alcohol until October 2015 (R. 2312) ("Do you drink alcohol?  Yes -

How much/how often? About a beer a day"), Dr. Khan and Dr. Schale either did not know or did not acknowledge that fact in their opinions, and for that reason their opinions were discounted.

Plaintiff next argues that the ALJ failed to address any of the regulatory factors in weighing Dr. Khan's opinion. Once again, this argument is without merit. To be sure, the ALJ did not name the regulatory factors when weighing Dr. Khan's opinion, but that is not what is required. The ALJ must consider the regulatory factors, but he need not discuss each factor. The court will not insist on a factor-by-factor analysis so long as the "ALJ's decision [is] 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" Oldham v. Astrue, 509 F.3d 1254, 1258 (10th Cir. 2007) (quoting Watkins, 350 F.3d at 1300). Here, it is apparent the ALJ considered the regulatory factors because he even discussed that Dr. Khan was a treating psychiatrist, that he had treated Plaintiff since 2014, and that his opinion was not well-supported by relevant evidence. The ALJ stated the weight accorded and the reasons for that weight--more is not required.

Plaintiff argues that the ALJ should have recontacted Dr. Khan before he discounted the opinion as an opinion on an issue reserved to the Commissioner since he could not ascertain the bases for that opinion. But, the problem was not that the ALJ could not discern the bases for Dr. Khan's opinion, he discerned those bases, found them lacking, and rejected the opinion. Plaintiff has shown no error in the ALJ's evaluation of

Dr. Khan's opinion or in the reasons given to reject it. They are specific, legitimate reasons for rejecting the opinion.

Plaintiff's claim that the ALJ failed to give good reasons to reject Dr. Schale's opinion suffers the same fate as his claim regarding the evaluation of Dr. Khan's opinion, and the court will not belabor the point.

Pointing to a single box checked on one of the VA's "Health Summaries," apparently completed by Sally D. Hass, and indicating "Total occupational and social impairment," Plaintiff argues that remand is necessary because the ALJ did not identify the weight given Dr. Hass's opinion. (Pl. Br. 58). To the extent that this single line statement in a 2800 page record can be called a medical opinion, the court finds no error in the ALJ's handling of it. First of all, as Plaintiff argued herein with regard to the opinions of both the state agency physicians and the state agency psychologists, check-the-box evaluation forms "standing alone, unaccompanied by thorough written reports or persuasive testimony, are not substantial evidence." Fleetwood, 211 F. App'x at 740 (quoting Frey v. Bowen, 816 F.2d 508, 515 (10th Cir. 1987)). Dr. Hass's one-line opinion is accompanied by neither a written report nor any other form of persuasion. Moreover, as the ALJ noted with the opinion of Mr. Wisner, Sally Hass's credentials are unknown from looking in the Health Summary cited by Plaintiff. Further, the Tenth Circuit has recognized that a court "cannot insist on technical perfection," but is guided instead by common sense in reviewing Social Security cases. Keyes-Zachary v. Astrue, 695 F.3d 1156, 1166, 1167 (10th Cir. 2012). "Perfection in processing millions of such

claims annually is impossible." <u>Bowen v. Yuckert</u>, 482 U.S. 137, 157 (1987) (O'Conner,

J., <u>concurring</u>). Finally, as the Commissioner points out, the ALJ thoroughly considered

and discounted the disability decision of the VA regarding PTSD. (R. 1102-03). The

error, if there was any in discovering and weighing Dr. Hass's opinion was harmless.

Plaintiff has shown no error in the ALJ's evaluation of the medical opinion

evidence.

## III.    Miscellaneous Arguments of Error

In the last section of his Brief, Plaintiff lists a number of miscellaneous claims of

error which he suggests also leave the ALJ's decision unsupported. The first is that the

vocational expert (VE) identified only light exertion level jobs, but because the ALJ

found that Plaintiff is limited to standing and/or walking a total of four hours in an eight-

hour workday, Plaintiff is unable to perform light work. (Pl. Br. 59-60). This is so, in

Plaintiff's view, because light work requires the ability to stand and/or walk for six hours

in an eight-hour workday, the VE is prohibited from varying from the exertional

classifications established by the Social Security Administration, and consequently the

VE's contrary testimony is not substantial evidence to support the ALJ's determination

that Plaintiff can perform the jobs suggested by the VE. <u>Id.</u>, at 60 (citing, without

pinpoint citation, SSR 83-10 and SSR 00-4p).

Plaintiff's argument misconstrues the definition of "light work," the purpose of VE

testimony, and SSR 00-4p. The regulations defining "light work" explain that "a job is in

this category when it requires a <u>good deal</u> of walking or standing, <u>or when it requires</u>

sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R.

§ 404.1567(b) (emphases added). SSR 83-10 cites as its authority, in part, 20 C.F.R.

§§ 404.1563-404.1569, and includes identical criteria as discussed above in its definition

of "light work." 1983 WL 31251, at *1, *5 (Jan. 1, 1983). SSR 83-10 recognizes that

because "frequent lifting or carrying requires being on one's feet up to two-thirds of a

workday, the full range of light work requires standing or walking, off and on, for a total

of approximately 6 hours of an 8-hour workday." Id., at *6 (emphasis added).

The VE did not testify, and the ALJ did not find that Plaintiff can do the full range

of light work. Rather, the VE testified that an individual with the RFC assessed by the

ALJ would be able to do "a limited range of light . . . occupations" including the three

representative jobs relied upon by the ALJ--office helper, bench assembler, and

photocopy machine operator. (R. 1144). The ALJ in turn, noted that if Plaintiff were

able to perform the full range of light work, a finding of "not disabled" would be directed

by application of Medical-Vocational Rule 202.21, but because Plaintiff could not do the

full range of light work, he had gotten testimony from a VE, determined that the VE

testimony is consistent with the Dictionary of Occupational Titles (DOT), and found that

Plaintiff has the capacity to perform the requirements of the representative occupations

suggested by the VE. (R. 1104). There is no error here.

Moreover, even the example from SSR 00-4p quoted in Plaintiff's Brief confirms

the error in Plaintiff's reasoning. The Ruling states, "For example, if all available

evidence (including VE testimony) establishes that the exertional demands of an

33

occupation meet the regulatory definition of "medium" work (20 CFR 404.1567 and 416.967), the adjudicator may not rely on VE testimony that the occupation is "light" work." (Pl. Br. 60) (quoting SSR 00-4p, 2000 WL 1898704, at *3 (Dec. 4, 2000)) (emphasis added). Here, all available evidence, including the VE testimony establishes that the exertional demands of the representative jobs meet the definition of light work and the DOT establishes that the jobs are light work, therefore the ALJ properly relied on the VE testimony that the jobs are light work.

Plaintiff points out testimony that he had right knee surgery the week of the hearing and would require a knee replacement, and argues that the ALJ should have assessed postural limitations. Id. However, as the Commissioner points out, a claimant's testimony of limitations alone is insufficient to establish disability. 20 C.F.R. § 404.1529.

In his remaining allegations Plaintiff complains that the ALJ used the term "veracity" in discussing whether his allegations of symptoms were supported by the record; erroneously included the lack of a TENS unit as an example of Plaintiff's limited course of treatment, and made other "factual inaccuracies" in evaluating the record; failed to consider the Frey factors when discussing Plaintiff's lack of compliance with treatment; and ignored evidence favorable to Plaintiff. (Pl. Br. 61-62).

As with much of Plaintiff's arguments regarding the ALJ's RFC assessment, Plaintiff's arguments do not focus on establishing that the ALJ applied an incorrect legal standard or that his decision is not supported by the record evidence. Rather, he focuses on evidence which in his view supports a finding of disability and which the ALJ

"should" have given greater weight in his analysis. But that is not the standard applicable in a Social Security disability case. As noted at the beginning of this decision, the court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman, 511 F.3d at 1272; Hackett, 395 F.3d at 1172; see also, Bowling, 36 F.3d at 434 (The court may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.) (quotation omitted).

As usually happens in disability cases, the record evidence here is equivocal and does not point just one way. There is also evidence which supports a finding of disability. However, "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence. [The court] may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." Lax, 489 F.3d at 1084 (citations, quotations, and bracket omitted); see also, Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966). Because the record evidence supports the Commissioner's decision and because the ALJ applied the correct legal standard, the decision below must be affirmed.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated this 26th day of October 2017, at Kansas City, Kansas.


s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**